IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

ROYAL HOUSING, LLC,

Plaintiff,

v.

CITY OF JAMESTOWN, NEW YORK;
SAMUEL TERESI, individually and in his
official capacity as Mayor of the City of
Jamestown; VINCE DeJOY III, individually
and in his official capacity as Director of
Development of the City of Jamestown; GREG
MORAN, individually and as Rehab
and Code Enforcement Officer of the
City of Jamestown,

Defendants.

**COMPLAINT**

**Civ. Action No. _____**

---

Plaintiff, by and through undersigned counsel, as and for its Complaint against the above-named Defendants, alleges as follows:

## NATURE OF ACTION

1.      This is a civil action under 42 U.S.C. § 1983 seeking damages and declaratory and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Fourth and Fourteenth Amendments of the United States Constitution, when, in order to send a message to the community, Defendants summarily condemned Plaintiff's 5-unit residential investment property and ordered all tenants and Plaintiff to vacate on one-hour's notice following a police raid that uncovered heroin-related contraband in only some of the building's units, primarily tied to an unauthorized burglar who had occupied a portion of the premises without Plaintiff's knowledge or permission.  In addition, such

action was taken pursuant to an unconstitutionally vague statute in an attempt to bypass proper eviction proceedings law by grafting Penal Law considerations onto a local statute intended only to regulate the condition, occupancy and maintenance of property.

## JURISDICTION AND VENUE

2.      Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343. Declaratory and injunctive relief is authorized under 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983 and FED. R. CIV. P. 57.

3.      Venue in this district is proper under 28 U.S.C. § 1391(b) because the acts and events giving rise to the relief sought herein occurred in the Western District of New York, namely the County of Chautauqua.

## PARTIES

4.      Plaintiff Royal Housing, LLC is a limited liability company organized under the laws of the State of New York, with a principal office at 853 East Second Street, Jamestown N.Y. 14701.  Brenda Strasser and Harold Whitford are the two managing members/owners of Royal Housing, LLC.

5.      Plaintiff Royal Housing, LLC wholly and directly owns upwards of 65 distinct residential properties in the City of Jamestown and is directly responsible for managing those properties, i.e. leasing, collecting rents from tenants at, and making repairs to those properties.  Harold Whitford separately owns H. Whitford Property Management, a property management company in the business of managing (without owning) approximately 100 additional residential properties within the City of Jamestown.  Collectively between Royal Housing, LLC and H. Whitford Property Management, Brenda and Harold oversee more than 350 residential units within the City of Jamestown.

6.      Brenda Strasser and Harold Whitford have been involved in the purchasing and managing of residential investment properties for years, with both holding important positions within the Jamestown Real Estate Investor's Association from time to time.

7.      Defendant City of Jamestown is a municipal corporation with offices located at 200 East Third Street, City of Jamestown, County of Chautauqua, State of New York.

8.      Defendant Samuel Teresi is the Mayor of the City of Jamestown, with an office at 200 East Third Street, City of Jamestown, County of Chautauqua, State of New York.

9.      Defendant Teresi, in his capacity as Mayor, is the chief executive officer of the City of Jamestown, and is responsible for "for the day-to-day administration and supervision of all City affairs, departments, offices and agencies of the City . . . ." Charter of the City of Jamestown § C-31.

10.     The City Council of the City of Jamestown adopted legislation on or about September 15, 2003 creating a "Department of Development." Jamestown Code § 5-5 provides, *inter alia*, that the Department of Development and all of its activities shall be under the general supervision of the Director of Development.

11.     Defendant Vince DeJoy III is the Director of Development of the City of Jamestown.

12.     Defendant DeJoy, in his capacity of Director of Development of the City of Jamestown, directs and supervises various code enforcement personnel, including Defendant Moran.

13.     Defendant Greg Moran is an employee of the City of Jamestown, New York and holds himself out as having the following job titles:  a) Rehab and Code Enforcement Officer and b) Housing Inspector.

## FACTS COMMON TO ALL CLAIMS

14.     Plaintiff acquired premises commonly known as 1091 E. Second Street (hereinafter "1091 E. Second Street") in the City of Jamestown on or about August 1, 2012.

15.     Said premises consist of a rectangular lot having dimensions of 75 feet by 100 feet, principally improved by a wood frame residential structure having an attic, basement and two floors used for residential purposes.  The two floors contain a total of five apartments, each including private kitchen and bathroom facilities.  The apartments are numbered 1 through 5.  Prior to September 4, 2014, each first floor apartment had a separate entrance for its respective unit, and the second floor units (4 and 5) shared secure, locked entrances into a common hallway.

### The City of Jamestown Housing Code Enforcement Scheme

16.     Jamestown Code § 140-2 adopts and makes applicable within the City of Jamestown the New York State Uniform Fire Prevention and Building Code.  Jamestown Code § 140-3 vests enforcement powers in the Bureau of Fire Prevention in the City of Jamestown's Fire Department, which is under the supervision of the "Chief of Police/Director of Public Safety."  However, none of the actions taken by Defendants that form the basis of this Complaint were taken pursuant to Chapter 140 of the Jamestown Code.  Rather, the acts of Defendants that form the basis of this Complaint were, by Defendants' own representations, taken pursuant to Chapter 215 of the Jamestown Code.

17.     Chapter 215 of the Jamestown Code (hereinafter "Chapter 215"), entitled "Property Rehabilitation and Conservation," provides an expansive regulatory scheme concerning occupancy and maintenance of residential, non-residential, commercial and industrial buildings, structures and vacant areas by

which new building construction and existing structures are regulated.  *See* Jamestown Code § 215-2.

18.    The New York State Department of State, pursuant to authority granted it by the Legislature under Executive Law § 377, has adopted what is known as the New York State Uniform Fire Prevention and Building Code (sometimes called the "Uniform Code") and the New York State Energy Conservation Construction Code. Chapter 215 refers to these statutes as the "Uniform Code" and the "Energy Code."  The City of Jamestown's statutory scheme requires that a building permit be obtained for construction, alteration and the like of any building or structure that must conform to either the Uniform Code or the Energy Code.  Jamestown Code § 215-49.

19.    The Department of Development, under the direction and charge of the Director of Development, is responsible for administering and enforcing all provisions of the Uniform Code and Energy Code.  Jamestown Code § 215-48(B).

20.    The Director of Development is authorized to delegate responsibilities to "code enforcement personnel," including the "Rehab and Code Enforcement Officer," i.e. Defendant Moran.  Jamestown Code § 215-6.

21.    Code enforcement personnel, including Defendant Moran, are empowered to, *inter alia*, review and approve or disapprove applications for building permits and certificates of occupancy, to inspect premises for purposes of obtaining Code compliance, to issue stop-work orders, to review and investigate complaints, to issue notices of violation pursuant to Jamestown Code § 215-61, to issue notices to vacate pursuant to Jamestown Code § 215-64, and to pursue administrative enforcement actions and proceedings.  Jamestown Code § 215-48(D)(2).

22.    In addition to requiring compliance with the Uniform Code and Energy Code, the Property Rehabilitation and Conservation Law includes

overlapping requirements pertaining to plumbing, electrical work, ventilation, fire safety and numerous other aspects of building construction and maintenance. Jamestown Code §§ 215-7 – 45.2.

23.     The Property Rehabilitation and Conservation Law authorizes and requires inspections to determine whether the work authorized by a building permit complies with the Uniform Code and Energy Code. Jamestown Code § 215-50.

24.     When code enforcement personnel ascertain that any building, structure or premises violates the Uniform Code, the Energy Code or Chapter 215, they are required to issue a "notice of violation," a term specifically defined in Chapter 215. Jamestown Code § 215-61(A).

25.     A notice of violation must be in writing, dated, signed by one of the code enforcement personnel, specify the provision(s) of the Uniform Code, Energy Code and/or Chapter 215 that are being violated, and specify the conditions or activities that cause such violation(s). Further, the notice of violation must (1) specify the period of time that the code enforcement personnel deems reasonably necessary to achieve compliance, (2) direct that such compliance be achieved within the time specified, (3) state that an action or proceeding to compel compliance may be instituted if compliance is not timely achieved, and (4) inform the person alleged to be in violation of "his/her right to apply within such time as may be designated in such notice for a hearing before the Director of Development or his/her designated representative, or [that] he/she may appeal in such time designated to the Property Rehabilitation and Conservation Board of Appeals." Jamestown Code § 215-61(A). Chapter 215 also designates appropriate methods of service for the notice of violation. *Id*.

26.     Jamestown Code § 215-70, entitled "Board of Appeals," establishes the Property Rehabilitation and Conservation Board of Appeals, mentioned

*supra*, consisting of nine members, each appointed to terms of three years staggered so that three terms expire annually.

27.     However, according to the City of Jamestown, New York's website listing of "Boards and Commissions," as of October 17, 2014, the Property Rehabilitation and Conservation Board of Appeals is comprised of five members, not nine.

28.     The Board of Appeals' jurisdiction is defined as follows:

> The Property Rehabilitation and Conservation Board of Appeals shall hear and determine matters referred to the Board by the Director of Development or his duly authorized representative or appeals *from any person presented with a notice of violation* in accordance with the provisions of this Part 2. Any person seeking relief from the Board *following a notice of violation* must file a notice of appeal with the Director of Development or his duly authorized representative of his/her desire to appeal to the Board prior to the expiration of the time limit for compliance *stated in the notice of violation.*

Jamestown Code § 215-70(C) (emphasis added).

29.     As indicated, the Board of Appeals' jurisdiction is not plenary; it springs upon the presentation of a notice of violation and is limited to reviews of such. Ergo, the Board of Appeals has no jurisdiction to hear appeals from persons presented and served with "notices to vacate" issued under Jamestown Code § 215-64.

30.     When work is not timely completed within the time for compliance set forth in a notice of violation, the City may elect, among non-exclusive remedies including the imposition of civil penalties under Jamestown Code § 215-61(C), to pursue injunctive relief in a judicial forum under Jamestown Code § 215-61(D), as well as the remedies specified in New York Executive Law § 382(2).

31.     Also, in the event of any violation of Chapter 215, the City may initiate proceedings providing for imprisonment of up to 30 days and a fine of up to $1,000 for each day a violation remains. Jamestown Code § 215-68(A).

32.    The Director of Development also has the power to issue a "notice of intent to vacate" based on a determination that a building or part thereof is unfit for human habitation, is an unoccupied hazard, or is otherwise in violation of a provision of Chapter 215, in which case the Director of Development "shall include such finding within a notice of violation" that also states "his intent to order" the premises to be vacated or not to be occupied or to be repaired or otherwise brought into compliance.  Jamestown Code § 215-64(A).

33.    In the event of noncompliance with the provisions of a notice of violation, the Director of Development may then serve and post a "notice to vacate," which must prescribe the length of time by which the building or part thereof designated as unfit for human habitation must be vacated.  Jamestown Code § 215-64(B).

34.    Once a notice to vacate has been posted and served, and the time period to vacate prescribed in the notice to vacate has expired, the premises must be vacated.  It is unlawful for an owner or tenant or any other person (without written authorization from the Director of Development or his/her agents) to re-enter the affected structure or portion thereof for any use, including making repairs.  Any person who occupies or re-enters the premises in violation of the notice to vacate shall, according to Jamestown Code § 215-64(G), be charged with trespassing and subjected to the penalties (including imprisonment of up to 30 days) prescribed in Jamestown Code § 215-68.[1]

---

[1] Strangely, § 215-64 states that a violator "shall be charged with trespassing" but subjected to the penalties prescribed in § 215-68, which include imprisonment up to 30 days. "Trespassing" is a non-criminal violation under the New York Penal Law, and is thus punishable by a maximum of 15 days in jail. N.Y. P.L. §§ 140.05, 70.15(4). The greater offenses of criminal trespass in the third through first degrees are defined as class B misdemeanors, class A misdemeanors and class D felonies respectively. N.Y. P.L. §§ 140.10, 140.15, 140.17, 70.15(1)-(2), 70.00(2). It therefore appears that the City of Jamestown has attempted to create a non-existent offense specifically in the Property Rehabilitation and Conservation Law

*The September 4, 2014 Raid*

35.     On or about August 28, 2014, an officer of the Jamestown Police Department applied to the Jamestown City Court for, and was granted, a warrant to search apartments 3 and 4 of 1091 E. Second Street.

36.     During daytime morning hours on September 4, 2014, the Jamestown Police Department, including the SWAT Unit, executed said warrant, entering both apartments 3 and 4 of 1091 E. Second Street.

37.     Several suspected empty heroin bags were found in apartment 3, but no heroin or other contraband was found.

38.     The following contraband was seized from apartment 4:  a cell phone, 3 positively field-tested bags of heroin, 3 suspected empty heroin bags, and 1 round of .22 LR ammunition.  Two individuals, one being the tenant of apartment 4, were charged with criminal possession of a controlled substance in the seventh degree in violation of New York Penal Law § 220.03, a class A misdemeanor.

39.     Upon information and belief, members of the Jamestown Police Department SWAT Unit who executed the aforesaid search warrant observed four subjects exiting apartment 5 and attempting to go to apartment 4.

40.     One Hispanic male, Jose Diaz-Solis, was secured at apartment 5's doorway into the common hallway of 1091 E. Second Street.  Upon information and belief, within apartment 5, in Mr. Diaz-Solis' proximity, was a bundle of heroin and a hypodermic needle appearing to be loaded with heroin solution. This led to a further search of apartment 5, which discovered a cell phone and

---

to punish non-compliance with notices to vacate, as the Jamestown Code's general "penalties for offenses" section imposes proper violation-level punishment for violations of the Code.  *See* Jamestown Code § 1-1.

charger, $684 in hidden United States currency, and, in the yard below two open apartment 5 windows, a travel mug with 36 bags of heroin.

41.     Apartment 5 was last rented for the month of June 2014, and had been vacant, so Plaintiffs' members believed, during the months of July and August 2014.

42.     Approximately two weeks before the raid, Harold Whitford and Brenda Strasser had inspected apartment 5, observing it to be vacant, unfurnished and showing no signs of occupancy.  The door to the apartment was locked and secure at that time, the utilities to the unit were off, and the door and windows to the unit were also secure.  After the last tenant moved out in June 2014, Mr. Whitford had the lock changed, and no tenants or occupants of 1091 E. Second Street had access to its key.  Mr. Diaz-Solis was not an authorized tenant of 1091 E. Second Street at the time of the raid.

43.     In consequence of the foregoing facts, Mr. Whitford furnished a sworn deposition to the Jamestown Police Department, which formed the basis for an accusatory instrument charging Mr. Diaz-Solis, *inter alia*, with burglary in the second degree in violation of New York Penal Law § 140.25, a class C violent felony.

44.     Notably, no search of apartments 1 or 2 was authorized by the search warrant, and the tenants of apartments 1 or 2 were neither arrested nor charged with criminal activity by the Jamestown Police Department, and apartment 1 was not even searched.  Upon information and belief, apartment 2's tenant, one Samuel Soto (a tenant of 4 years), was strip-searched, cavity-searched, handcuffed and detained while the drug K-9 unit and officers went through this apartment without a warrant and no contraband was found.

45.     The tenants of apartments 1 and 2 had continuously rented apartments at 1091 E. Second Street for a period of time in excess of one year, and

Plaintiff's members were unaware of there having been any arrest of those tenants for narcotic sales or any other criminal activity throughout their tenancy, nor do Plaintiff's members have any knowledge that said tenants were participating in or supporting the use and sale of narcotics anywhere at 1091 E. Second Street.

### The September 5, 2014 Seizure of 1091 E. Second Street

46.     Upon information and belief, a member of the public named Daniel Byers, who resides near 1091 E. Second Street at 8 Curtis Street, made a complaint to the City of Jamestown that persons speaking Spanish were visiting 1091 E. Second Street during evening and nighttime hours on September 4, 2014, i.e. after the above-described raid, and drinking alcoholic beverages on the porch of 1091 E. Second Street – something that is not illegal.  *Cf.* Jamestown Code § 93-2 (open container law).

47.     Upon information and belief, the inference Mr. Byers was making and that, as will be described below, Defendants Teresi and DeJoy acted upon, was that these guests were purchasing or using heroin or other narcotics at the premises.

48.     On September 5, 2014, Defendant Teresi requested Defendant DeJoy "condemn" 1091 E. Second Street, and Defendant DeJoy delegated that responsibility to Defendant Moran.

49.     Defendant Moran then went to the premises and nailed a notice on the exterior of said premises stating the following:

City of Jamestown, New York

**TAKE NOTICE – THIS BUILDING/APARTMENT IS**

# CONDEMNED

by order of the Department of Development and is **not to be occupied** until a Certificate of Occupancy has been issued.

Property Address:                    Name, address & phone of
                                     owner:

1091 E. 2nd St.                      Royal Housing LLC
                                     132 ½ Prospect St.
                                     Jamestown

   The owner of this property has failed to bring it into
compliance with Chapter 215 of the Code of the City of
   Jamestown.  This building/apartment shall remain
posted and unoccupied until cited code violations have
   been remedied and an inspection is conducted
   by the inspector listed below.  Additional legal
action is being pursued against the owner by the
Department of Development in Jamestown City Court.

Note:  The owner or other occupants of this building may have been
authorized by the Department of Development to be on the property
during designated hours to remove personal items and/or furnishings.

For additional information please contact
the Department of Development at 483-7541.

Greg Moran   483-7660          9/5/14
HOUSING INSPECTOR              DATE OF POSTING

THE UNAUTHORIZED REMOVAL, MUTILATION OR COVERING UP OF
THIS NOTICE IS PUNISHABLE BY FINE OR IMPRISONMENT OR BOTH

BUILDING TO BE DEMOLISHED   YES ___   NO  X

50.    Defendant Moran also hand-delivered copies of a certain "Notice to Vacate" to the tenants who were present in the building at the time, a copy of which is attached hereto as Exhibit A.

51.    Said "Notice to Vacate" contained no language informing the tenants or Plaintiff that any of them had the right to a hearing or the right to appeal the "Notice to Vacate" or of any other methods and appurtenant deadlines for challenging the "Notice to Vacate."

-12-

52.     Defendant Moran also spoke to the tenants of apartments 1 and 2 and instructed them that they had one hour to gather what belongings they could and to vacate the premises.  They were further told that if they returned to the premises without written permission from him at any time before the condemnation was terminated they would be subject to arrest and prosecution.

53.     Plaintiff's member/owner, Harold Whitford, who actively participates in the day-to-day operation of the business and is a licensed property manager, spoke to Defendant Moran on that date and was informed that the premises were being condemned, that the tenants had one hour to vacate, that the premises must remain vacated until further notice, and that Plaintiff's agents and employees were not to enter the premises unless they had received prior written permission from Moran that could be presented to the police in order to avoid arrest and prosecution.

54.     Whitford telephoned Defendant DeJoy to protest the condemnation of the entire house, and Defendant DeJoy told Whitford that he was "sending a message" and that "if you [Whitford] don't like it, you can sue me [DeJoy]."

55.     On September 5, 2014, Defendant Moran mailed to Plaintiff a letter with an enclosure called "Notice to Vacate," both dated September 5, 2014.  A copy of said correspondence is attached as Exhibit B.

56.     Moran wrote, in part, that he "finds that violations of the Jamestown Code exists [*sic*] at 1091 [E] 2nd St and [is] declaring it a nuisance and/or an immediate danger to the health, safety or welfare of the occupants or the public under the powers granted to [him] under Chapter 215 Sections 46 and 64 of the Code of the City of Jamestown," and that he is "condemning the property until repairs are made to the property."

-13-

57.     Said Notice to Vacate asserts violations of the Jamestown Code at 1091 E. Second Street but gives only the following description of what such alleged violations are:

"The specific violation(s) is/are designated as follows:

**Declared nuisance**

In violation of Section **215-46**."

58.     Jamestown Code § 215-46(A) states that buildings and other structures and areas that "are in violation of the chapter are hereby declared to be a nuisance. . ."

59.     The word "nuisance" is not defined in Chapter 215's definitional section. *See* Jamestown Code § 215-6. Rather, *specific* violations of the plumbing, electrical, structural and other building construction and maintenance provisions in Jamestown Code §§ 215-7 through 215-45.2 are deemed a "nuisance" under Jamestown Code § 215-46(A) and the word "nuisance" has no other, independent meaning under Chapter 215. Thus, it is circular and without effect to assert that the only basis of a violation is because something is declared a "nuisance."

60.     At no point in time during Plaintiff's ownership of 1091 E. Second Street has Plaintiff ever been served with a notice of violation setting forth any specific provision of the Jamestown Code as to which said premises are in violation, other than what is set forth in the previously-mentioned Notice to Vacate, which describes the "specific violation" as the premises being a "declared nuisance" in violation of § 215-46, which in turn means only that there exist one or more violations of other provisions of the Jamestown Code, a description of which has never been furnished to Plaintiff.

61.     Sometime after the premises were vacated on September 5, 2014, but no later than September 8, 2014, the residential structure at 1091 E. Second Street was burglarized and valuable property stolen, including a natural gas-

fired heater that was a fixture in one of the apartments and three refrigerators, causing extensive damage to the premises' electrical infrastructure.

62.     At the September 8, 2014 Jamestown City Council meeting over which he presided, Defendant Teresi supported the City's "condemnation" policy, stating that he wanted to "make it as hot and unattractive as possible and send a message we don't want you here."

63.     It is the policy and custom of Defendants City of Jamestown, DeJoy and Moran that after a building is "condemned," the City's Department of Development and its personnel conduct warrantless searches, without permission of the owners and tenants, of the entire premises, including all apartments, attics, basements and common areas, and that Department personnel eventually, without adherence to any particular schedule (as there is none), notify property owners of alleged Code violations that must be rectified before the premises may be re-inhabited.  The City will give written permission to the owner, its agents and/or contractors to re-enter the premises (generally during daytime hours until 8:00 p.m.) to make repairs.

64.     Monthly rental income collected at 1091 E. Second Street averaged approximately $1,100 during the year preceding the raid, and as of September 1, 2014 was predicted to be $1,875.  Plaintiff has received no rental income for said premises for the months of September and October 2014, nor does Plaintiff have any prospect of receiving rental income for said premises until Defendants elect to cancel the outstanding "condemnation" notice.  Further, Plaintiff continues to incur property and school taxes, mortgage and insurance payments, heating and utility costs associated with preserving the property during the upcoming cold months, and yard and exterior maintenance costs.  Finally, as financing is secured with a private mortgage, the vacancy created by Defendants' actions also

risks termination of Plaintiff's insurance and a subsequent default on the mortgage.

### FIRST CLAIM FOR RELIEF
**(Lack of Pre-Deprivation Hearing and Notice
Thereof in Violation of the Procedural Due Process
Requirement of the Fourteenth Amendment)**

65.     On September 5, 2014, Defendants evicted Plaintiff's tenants at 1091 E. Second Street from their respective apartments as well as effected an eviction of Plaintiff from the entire residence situated on said premises.

66.     At no time prior to September 5, 2014 did Defendants give Plaintiff notice, or attempt to give Plaintiff notice, that said eviction was under consideration and might occur.

67.     At no time prior to September 5, 2014 was Plaintiff requested to or provided with the opportunity to commence a summary eviction proceeding in Jamestown City Court pursuant to Article 7 of the New York Real Property Actions and Proceedings Law to remove any tenants from any of the apartments at 1091 E. Second Street. This is significant because other municipalities in the district, such as the City of Buffalo, actively use New York's "bawdy house" laws to effect removal of tenants from premises where narcotics trafficking is suspected. *See* R.P.L. § 231; R.P.A.P.L. §§ 711, 715. In those situations, though, the municipality gives written notice to the landlord of the possibility of civil fines if the landlord does not commence a summary eviction proceeding within a specified period of time, minimally 5 days. *See* R.P.A.P.L. § 715. This procedure is followed because, despite the appearance of automatically voiding leases, case law clarifies that the bawdy house statutes are to be read as making leases voidable at the option of the landlord such that a formal judicial proceeding is required to effect removal. *See 220 West 42 Assoc's v. Cohen*, 302 N.Y.S.2d 494, 497

(N.Y. App. Term 1969) (per curiam) ("[T]he word 'void' in section 231(1) actually means voidable at the option of the landlord . . . .").

68.     At no time prior to September 5, 2015 did Defendants give Plaintiff notice, or attempt to give Plaintiff notice, of any specific violations of the Uniform Code, Energy Code or Chapter 215 violation concerning 1091 E. Second Street.

69.     At no time prior to September 5, 2014 did Defendants afford Plaintiff a hearing, formal or informal, as to whether the eviction of the tenants or of Plaintiff from the residence at 1091 E. Second Street was reasonable or necessary to cure any condition present at 1091 E. Second Street.

70.     The month-to-month tenancies that the tenants of apartments 1 through 4 held from Plaintiff constituted a property interest of Plaintiff protected by the Due Process Clause of the Fourteenth Amendment.

71.     For the tenants of 1091 E. Second Street, the one-hour notice Defendants gave them to vacate the premises (under pain of arrest, prosecution and imprisonment) imposed personal and pecuniary hardship, ended the status of their respective apartments as their homes, and risked them being made homeless.

72.     The summary evictions also, as a matter of law and fact, terminated the month-to-month tenancies and, thus, Plaintiff's property interest in and to said tenancies.

73.     The nature of Plaintiff's interest, then, consisted of the value of these month-to-month tenancies, which furnished an income stream needed to cover property taxes, insurance, mortgage principal and interest and other carrying costs for this investment property.  Further, Plaintiff had a property interest in the building itself and in its right of access to the building so that

Plaintiff may inspect, maintain and repair, secure and otherwise preserve the value of its capital investment.

74.      Defendants, by dispensing with a pre-deprivation (i.e. pre-eviction) hearing, created a high risk of erroneous deprivation because, as recognized by municipal courts tasked with handling R.P.A.P.L. summary eviction proceedings, "[w]here such other reasonable avenue for resolution of the issue exists, a forfeiture is abhorrent to the law." *Rubinstein Bros. v. Ole*, 101 Misc.2d 563, 567 (N.Y. Civil Ct. 1979) (citing *Cohen*, 302 N.Y.S.2d 494); *see also Cohen*, 302 N.Y.S.2d at 498 ("Where it is not necessary to evict a tenant to remove a violation of law, a landlord is not entitled to a final judgment.").

75.      This is not a case where a Code Enforcement Officer inspected the residence, ascertained the existence of Code violations, and determined that they were of sufficient severity that they jeopardized life and property if the premises were not immediately evacuated.

76.      In contrast, the only Code violation proclaimed by Defendants was that the premises was a "nuisance" within the meaning of Jamestown Code § 215-46, which begs the question, because said section defines "nuisance" as a violation of specific Code requirements set forth elsewhere in Chapter 215, specifically sections 215-7 through 215-45.2.

77.      Furthermore, Defendants' assertion of said violation (the circularly-defined "nuisance") was first made in the "Notice to Vacate" itself rather than in a separate notice of violation.

78.      It is clear that the basis for "condemning" 1091 E. Second Street was that one, maybe two, of the apartments in it had been used for selling heroin, as well as a speculative belief that heroin-related activity had continued after the September 4, 2014 raid up until the September 5, 2014 "condemnation."

-18-

79.    The sale of heroin, while obviously criminal in nature, is not a Code violation subject to regulation under Chapter 215, generally, or something that can form the basis for summary eviction under § 215-64, specifically.

80.    Even assuming the sale of heroin could form a basis to vacate a premises under Chapter 215, a high risk of erroneous deprivation nevertheless existed, because, as the foregoing factual allegations show, the chief (if not sole) drug dealer was arrested and charged with a very serious crime (and no doubt incarcerated or subjected to stringent bail requirements), the premises carefully searched and all suspected heroin removed, and Plaintiff put on notice that apartment 5 had been burglarized by unauthorized persons such that it could be secured and the arrested drug dealer could not return.  Further, upon information and belief, the sole basis for Defendants to believe that drug sales were continuing was a complaint from a nearby homeowner to a City of Jamestown complaint line that he suspected continued trafficking because persons speaking Spanish had gone to and from the premises on the night of September 4-5, 2014 – such information falling drastically below the constitutionally-required level of probable cause. *See People v. Debour*, 40 N.Y.2d 210, 216 (1976) ("We have frequently rejected the notion that behavior which is susceptible of innocent as well as culpable interpretation, will constitute probable cause").

81.    Defendants Teresi and DeJoy are lifelong friends; the former being current Mayor of the City of Jamestown and the latter, upon information and belief, being an as-yet-unannounced candidate to succeed Defendant Teresi. Based upon what both Defendants stated regarding the seizure of 1091 E. Second Street, it is clear that the two wished to burnish the reputation of the mayoral administration before the public.  In that sense, Defendants' desire to gain the favor of public opinion by taking a hard line against heroin dealers risks

compromising objectivity, fairness and consideration toward the rights of
Plaintiff.

82.     Within the Second Circuit, the third *Mathews v. Eldredge*, 424 U.S.
319 (1976), factor in determining what process is due in cases such as this was
articulated in *United States v. Premises and Real Property at 4492 S. Livonia Road,
Livonia, NY*, 889 F.2d 1258, 1265 (2d Cir. 1989), *reh'g denied*, 897 F.2d 659 (1990)
(per curiam), which is "the narrow [interest] of obtaining pre-notice seizure of a
fixed item like a home, not the broad interest of enforcing the drug laws, since
the latter will also be served by forfeiture after an adversary proceeding."

83.     Here, no civil forfeiture action has been brought under any federal
or state statute concerning 1091 E. Second Street.

84.     The law within the Second Circuit was also clear at the time of the
seizure described herein such that the "exigent" or "extraordinary"
circumstances exception needed to dispense with pre-deprivation notice
required that seizure be necessary to secure an important governmental or public
interest, that very prompt action be necessary, and that the government official
who initiated the seizure did so by applying the standards of a narrowly drawn
statute. *Fuentes v. Shevin*, 407 U.S. 67, 90-91 (1972); *United States v. 141st Street
Corp. by Hersh*, 911 F.2d 870 (2d Cir. 1990).

85.     Defendants have not applied the standards of a narrowly drawn
statute.  Even if Chapter 215 were deemed a narrowly drawn statute – which
Plaintiff does not concede – Defendants have not complied with the statute
because they did not serve Plaintiff a notice of violation sufficient to alert
Plaintiff to any alleged Code violations so that they may be rectified before
insisting the structure be vacated.  Rather, Defendants appear to have arbitrarily
expanded the scope of Chapter 215 to condition a landlord's ownership and use
of real property on the behavior of its tenants and to authorize pre-notice seizure

-20-

for a "nuisance" that covers a panoply of conditions distinct and apart from the Building Code violations properly regulated by Chapter 215.   In which case, the legislation loses any character of being narrowly-drawn even if it were strictly complied with.

86.     The City's strong interest in eradicating narcotics sales within its borders does not meaningfully overlap with the City's interests under Chapter 215, which are to regulate the construction and maintenance of real property.

87.     Because narcotics trafficking is a law enforcement matter, and because the Department of Development and Defendants Teresi, DeJoy and Moran are not law enforcement officers, the interest of the City in using Chapter 215 to summarily evict the tenants from their apartments and Plaintiff from the building it owns should be measured with respect to the purposes of Chapter 215, which are to ensure that real property is built and maintained in a manner that is safe and functional for occupants and that does not present a danger to nearby people and property.

88.     Defendants could have afforded Plaintiff and Plaintiff's tenants a meaningful, informal hearing prior to the condemnation.  Plaintiff's members/owners are known to Defendants and may be readily contacted by telephone and mail.  Notice to tenants of hearing rights could have been furnished by taping a notice to the exterior door and to the tenant's mailboxes, or by requesting Plaintiff's members/agents/employees to notify the tenants.  If specific Code violations existed in fact, it would have been a simple and inexpensive task for Defendants to tell Plaintiff's members what such violations were by reference to specific section numbers of the Jamestown Code rather than by using the uninformative word "nuisance."  Because it is unlikely that any serious Code violations existed at the premises, such a hearing, by its very

nature, would be brief and involve a minimal expenditure of government employee time.

89.     In the past, Defendants have condemned specific units of premises, rather than entire buildings, when tenants are charged with drug dealing, although in no case are tenants evicted via formal summary eviction proceedings pursuant to the R.P.A.P.L.[2]  Despite suffering serious ramifications from these prior unit-specific condemnations, Plaintiff has not pursued relief until now because the condemnation of 1091 E. Second Street represents a new step forward in City policy whereby Plaintiff's entire building is condemned for suspected actions (that is, prior to final adjudication in criminal court) concerning, at most, a portion of the building.

90.     In this case, the search warrant application, the search itself and the products of the search did not provide any reasonable cause to believe that there were contraband sales or Code violations within apartments 1 and 2, making the summary condemnation of those units further arbitrary, capricious and factually unfounded.

91.     Given the demographics of the City of Jamestown and the proliferation of drug use in society generally and within the City of Jamestown particularly, there have been numerous searches and seizures of drugs, including heroin and methamphetamine, from apartments and houses throughout the City. Upon information and belief, Defendants resort to the "condemnation" procedure in only a fraction of these cases.

---

[2] A non-exhaustive list of premises within the City of Jamestown tied to either Royal Housing LLC or H. Whitford Property Management that have suffered condemnation of units therein include: 45 Baker Street, 602 Lafayette Street, 705 Lafayette Street (three times), 4 Lakeview Avenue, 103 Willard Street, 43 Barrows Street, 152 Chandler Street, 368 Buffalo Street, 6 Windsor Street, 615 Prendergast Avenue, 112 West 7th Street, 512 Monroe Street.

92.     These "condemnations" are neither random nor unauthorized because they are always effectuated by Department of Development personnel, including Defendants DeJoy and Moran, who have actual, final policymaking authority for Defendant City to effectuate them.

93.     Nevertheless, these "condemnations" are arbitrary because certain property owners are exempt altogether from such actions; in other instances, involving larger quantities and aggravating circumstances when compared to those present in this case, Defendants forego condemnation altogether.

94.     For example, Defendants refrain from using condemnation in the approximately twenty multiple dwellings within the City of Jamestown owned and operated by Citizens Opportunity for Development and Equality, Inc., commonly known as "C.O.D.E.," which maintains and lets several hundred low income housing units.  Drug raids and seizures have occurred on C.O.D.E. properties, yet Defendants do not "condemn" any of C.O.D.E.'s apartment units or multiple dwellings.

95.     Thus, Defendants have refrained from formulating a neutral, even-handed set of criteria by which the necessity for and nature of any particular condemnation may be gauged.

96.     In short, Defendants' seizure of Plaintiff's premises without pre-seizure notice or hearing deprived Plaintiff of procedural due process, was unjustified by application of the *Mathews v. Eldredge* criteria, and was not authorized by the exigent circumstances exception for a number of reasons, including the fact that the condemnation determination was not an application of standards set forth in a narrowly-drawn statute.

97.     Even assuming that the exigent circumstances exception to the rule that due process requires notice and hearing prior to eviction applied here, i.e. that there was a special need for prompt action to secure an important

governmental and public interest and that Defendants, by initiating the seizure of Plaintiff's property, reasonably determined under the standards of a narrowly drawn statute that such seizure was necessary and justified, it was unreasonable and violated the Due Process Clause for such seizure to oust Plaintiff from the premises at 1091 E. Second Street.

98.    Plaintiff, as owner and landlord, and its two member/owners, have fully cooperated with the City of Jamestown Police, pressed serious felony charges against the drug dealer who was apprehended on the premises, and in no way condoned or suffered use of the premises for the sale of narcotics.

99.    Whatever exigent circumstances may have existed in favor of summary eviction by Defendants of the tenants, such circumstances did not exist *vis-à-vis* Plaintiff, the owner and landlord.

100.    Defendants' ouster of Plaintiff from the premises has not only caused Plaintiff economic loss in the form of lost rents, but Plaintiff has been unable to regularly enter the premises, inspect same, secure the premises as needed, make repairs, and otherwise preserve the value of the residence, and Defendants' ouster of Plaintiff has promoted the deterioration and dilapidation of the premises and is contributing to urban blight.

## SECOND CLAIM FOR RELIEF
### (Lack of Post-Deprivation Hearing or Notice of Post-Deprivation Hearing Rights in Violation of the Procedural Due Process Requirement of the Fourteenth Amendment)

101.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above.

102.    Even assuming that exigent circumstances justified Defendants' seizure of the residence at 1091 E. Second Street without a pre-deprivation hearing, the Due Process Clause still required contemporaneous pre-deprivation

notice of a post-deprivation hearing, coupled with the requirement of a meaningful post-deprivation hearing that should be conducted promptly.

103.     Given the sudden and severe economic impact that summary eviction and seizure without notice has on both tenants and the owner, and given the ambiguity as to whether Code violations exist on the premises and, if so, just what they are, and the resulting protracted length of time it would take for an owner such as Plaintiff to ascertain and rectify such Code violations (if any exist), a meaningful and prompt administrative hearing was constitutionally required, either pre- or post-deprivation.

104.     Indeed, if Defendants may constitutionally dispense with providing Plaintiff any administrative hearing at all, thereby relegating Plaintiff to an Article 78 proceeding in the courts of the State of New York, Plaintiff would be forced to litigate the merits of Defendants' no-notice eviction and seizure determination without having been furnished any explanation as to the exigent circumstances Defendants perceive or a non-conclusory description of what Code violations are alleged to exist.

## THIRD CLAIM FOR RELIEF
### (Seizure in Violation of the Fourth Amendment)

105.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above.

106.     The condemnation of 1091 E. Second Street worked an eviction of the tenants and the landlord/owner, i.e. Plaintiff.

107.     Said eviction was performed by Defendant Moran, who, upon information and belief, was acting under the express authority and direction of Defendants DeJoy and Teresi.

108.    While Defendants Moran, DeJoy and Teresi are not peace officers or otherwise empowered to arrest persons, said Defendants nevertheless invoked the police powers of the Jamestown Police Department when evicting Plaintiff and its tenants.  Specifically, the September 5, 2014 "condemned" notice that Defendants caused to be affixed to 1091 E. Second Street threatened punishment by fine or imprisonment (or both) in the event said notice was removed, mutilated or covered up, and otherwise threatening prosecution under Jamestown Code § 215-68, which authorizes "imprisonment for not more than 30 days" in addition to fines and certain other expenses.

109.    As the "condemned" notice states, the owner may not enter the building at 1091 E. Second Street except pursuant to authorization by the Department of Development "during designated hours."

110.    When the City condemns property in the manner used at 1091 E. Second Street, it prohibits owners and their contractors from accessing the condemned premises unless prior written permission is obtained from the Department of Development, said permission being in writing in order to constitute evidence of lawful authority to be presented in case of police inspection.

111.    Furthermore, the Notice to Vacate (Ex. A) that Defendant Moran served on Plaintiff and the other "occupants" of the premises at 1091 E. Second Street, warns that failure to vacate may result in imprisonment for not more than 30 days, and/or a fine, with each day that an offense occurs being deemed a separate offense punishable separately.

112.    Jamestown Code § 215-64(G) provides that a person re-entering the premises without written authorization of Defendants "shall be charged with trespassing and be subject to the penalties under §215-68," which include "imprisonment" for not more than 30 days or a fine, etc.

113.    The City of Jamestown Police Department does prosecute owners who re-enter their "condemned" premises without written authorization from Defendants.

114.    Said written permission generally authorizes the owner and/or its contractors to be present for the purpose of performing work during daytime hours with a "curfew" of 8 p.m.

115.    The City of Jamestown Police Department, acting in agreement with the Department of Development and the individually-named Defendants, routinely patrols premises that are "condemned" in the manner described above, and requires proof of written authority from the Department of Development for all non-City occupants, including the owner and owner's contractors, and commences criminal prosecution against such persons lacking written authorization.

116.    During the period of time that premises are "condemned" in the manner described above, Defendants Moran and DeJoy and other Code Enforcement Officers of the Department of Development of the City of Jamestown are free to, and do, enter and inspect each and every part of the "condemned" premises, without prior notice to the owner and without consent therefrom.

117.    On September 5, 2014, Defendants seized Plaintiff's real property commonly known as 1091 E. Second Street by authorizing and causing Defendant Moran to instruct the occupants to vacate the premises within one hour and by notifying one of Plaintiff's member/owners (Harold Whitford) that the premises were "condemned," and by affixing the "condemned" notice to the premises, all under threat to the tenants and to Plaintiff that a failure to vacate and re-entry without Defendants' permission would result in arrest, prosecution and punishment by incarceration.

-27-

118.   Immediately after affixing the "condemned" notice to the premises and ordering the tenants to vacate within one hour, Defendant Moran entered into the residential dwelling, without the permission of any tenant or of Plaintiff and Plaintiff's members or agents, and searched common areas and at least two apartments, including apartments 4 and 5.

119.   The "condemned" notice remains affixed to the exterior of the residence.

120.   The September 5, 2014 eviction of Plaintiff and its tenants from the residence at 1091 E. Second Street, under threat of arrest, prosecution and incarceration, was a seizure within the meaning of the Fourth Amendment to the United States Constitution.  This seizure was not authorized by a warrant or by any order or other process of a court, from the time of seizure until now.

121.   The law has been settled since *Soldal v. Cook County, Illinois,* 506 U.S. 56 (1992), that irrespective of whether a privacy or liberty interest of the owner is implicated, the Fourth Amendment protects against unreasonable seizures of property, including evictions that are effectuated by subtle threat of physical force and dire legal consequences at the hands of the police should instructions to vacate not be honored.  *See, e.g., Thomas v. Cohen,* 304 F.3d 563, 572 (6th Cir. 2002) (relying, *inter alia,* on *Soldal, supra,* and *U.S. v. Jacobsen,* 466 U.S. 109, 113 (1984)).

122.   Defendant Moran's entry into the residence at 1091 E. Second Street was unauthorized by any judicial or administrative search warrant, was without the consent of relevant tenants, and was without Plaintiff's consent.

123.   The search and seizure were not the products of a process that comported with procedural due process because there was no notice to the tenants or Plaintiff, nor an opportunity for the tenants and Plaintiff to be heard

prior to the search and seizure, nor was there an opportunity for abatement to obviate the need for the seizure.

## FOURTH CLAIM FOR RELIEF
### (Substantive Due Process)

124.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above.

125.    Plaintiff, on September 4, 2014 and through the present, has enjoyed a property interest in and to 1091 E. Second Street.

126.    Plaintiff, by deed recorded in the Chautauqua County Clerk's Office, held title in fee simple absolute to the premises commonly known as 1091 E. Second Street.

127.    Immediately prior to the "condemnation," eviction, and seizure events of September 5, 2014 described herein, Plaintiff held an additional property interest, consisting of the tenancies between it and the tenants of apartments 1 through 4.

128.    New York State law, similar to many states, recognizes a "month-to-month tenancy," pursuant to which a tenant is obligated to pay rent, and a landlord is obligated to let premises, for successive one calendar month periods, ending only when either the tenant or the landlord furnishes at least one full calendar month's notice of termination to the other.

129.    Thus, on September 5, 2014 Plaintiff held two forms of property rights concerning 1091 E. Second Street:  first, ownership of the premises in fee simple absolute and, second, the four month-to-month tenancies for apartments 1 through 4, under which Plaintiff was owed monthly rents of $375, $330, $350 and $425, respectively.

130.    These rights and interests were and are "property" within the meaning of the Due Process Clause of the Fourteenth Amendment.

131.    Defendants' forcible eviction of all the tenants, and of Plaintiff, from 1091 E. Second Street, deprived Plaintiff of the due process of law in violation of the Fourteenth Amendment because Defendants' acts were arbitrary, capricious and/or oppressive in the Constitutional sense, and were not merely incorrect or ill-advised.

132.    Under New York law, Plaintiff's obligations to its month-to-month tenants included an implied obligation to provide quiet enjoyment of the leased premises. *See, e.g., Edgerton v. Page*, 20 N.Y. 281 (1859) (establishing covenant of quiet enjoyment as implicit in every New York lease).

133.    When Defendants evicted the tenants, Plaintiff was placed in breach of its obligation to afford said tenants quiet enjoyment of their premises, thereby terminating the property interests Plaintiff enjoyed in and to said month-to-month tenancies.

134.    Therefore, Plaintiff was deprived of property in two ways: it was summarily denied access it enjoyed by reason of its ownership of the residence to enter the premises common areas and to improve, show and lease the unleased apartment, apartment 5, as well as any other apartments becoming vacant during the "condemnation;" second, Plaintiff's expectation of, and entitlement to, revenues from the existing month-to-month tenancies were immediately dissolved and terminated.

## FIFTH CLAIM FOR RELIEF
### (Declaratory Relief as to As-Applied Unconstitutionality of Chapter 215)

135.    Plaintiff repeats, reiterates and re-alleges each and every allegation set forth above.

-30-

136.    Chapter 215's provisions providing for the ability to order vacation and condemnation of premises are unconstitutional when enforced for the purpose of removing occupants suspected of narcotics-related activity.

137.    Chapter 215 is unconstitutionally vague when narcotics-related activity forms the basis for condemnation because Chapter 215 does not incorporate the Penal Law as a basis for issuing a notice of violation or seeking other relief specified in said chapter.  *See* Jamestown Code § 215-61(A).  Thus, property owners and managers cannot be said to be fairly on notice that criminal activity of occupants will subject their properties to summary condemnation.

138.    This claim that Chapter 215, insofar as it authorizes the summary seizure (and search) of residential real property, is unconstitutionally vague, constitutes a vagueness challenge in light of the facts of the case at hand in accordance with authorities such as *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) and *United States v. Rybicki*, 354 F.3d 124, 129 (2d Cir. 2003) (en banc).

139.    Plaintiff requests this Court apply the more exacting vagueness scrutiny customarily (but not always) applied to criminal legislation because a) violations of the condemnation notice may result in arrest, prosecution and "imprisonment" for up to 30 days, b) the summary seizure of real property is a "drastic measure," and c) such seizures implicate fundamental rights including those under the Fourth Amendment and the Fourteenth Amendment's Due Process Clause.  Legal authority for this request exists under *Vill. of Hoffman Estates v. Flip Side, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982) and cases cited in *Arriaga v. Mukasey*, 521 F.3d 219, 223 (2d Cir. 2008).

140.    Chapter 215, insofar as it authorizes summary seizure and condemnation based upon the existence of what Defendant City Code enforcement personnel considered to be a "nuisance," fails to alert ordinary people as to what conduct is prohibited because Defendants define the term

"nuisance" in Jamestown Code § 215-46 to encompass conduct beyond specific Housing and Energy Code violations without any definition or even clue as to the limits of such conduct.

141.   The statute, as applied, is further unconstitutionally vauge because Defendants' standard-less definition of "nuisance" confers unfettered discretion among the statute's enforcers to determine who to punish, i.e. arbitrariness. Furthermore, Defendants' construction of the statute in question is so broad that it reaches "innocent conduct:" Plaintiff, at all times, conducted itself innocently, it being without knowledge that its property had been burglarized and that unlawful sales of narcotics were occurring in a portion of the premises.

142.   As set forth above, New York's bawdy house statutes provide a mechanism to address criminal activity in the context of leaseholds.  However, these statutes, and their attendant judicial process, are not invoked when Defendants condemn properties wherein narcotics-relates activity is suspected. Defendants have instead attempted to short-circuit settled law and procedure with their own arbitrary application of an unrelated statute.

143.   The condemnation of 1091 E. Second Street, although the first of an entire building where less than every unit implicated narcotics-related activity, was not the first summary condemnation by Defendants where narcotics-related activity was involved.  *See* fn. 3, *supra.*

144.   Even if it could be said that the Penal Law was in some way incorporated into Chapter 215, the statute nevertheless promotes arbitrary and discriminatory application because it vests discretion in Defendants to issue notices of violation without an explicit limiting direction that such notices occur after an adjudication of guilt in a criminal court with respect to any charged offense.

-32-

145.    Defendant Teresi, through his comments to the City Council, has expressly condoned the usage of Chapter 215 in the manner described herein.

146.    Plaintiff and its member/owners do not condone criminal activity at their properties by the tenants, and have assisted law enforcement with the prosecution of any criminal activity discovered at their properties, but are not in a special position to ascertain whether criminal activity is occurring beyond what is brought to their attention by law enforcement investigation because undue interference with tenant activities risks violating covenants of quiet enjoyment.

147.    Upon information and belief, the policy of condemnation described herein will continue in the future, should narcotics-related activity be suspected at one of Plaintiff's properties and any arrest occur, causing Plaintiff to suffer valuable losses.

### Additional Allegations

148.    Plaintiff does not have an adequate remedy under New York State law.

149.    First, the cause of action of "inverse condemnation" under New York law is unavailable to Plaintiff because Defendants have not engaged in "a continuous, permanent trespass" rising to the level of a *de facto* taking.  Further, it is the City's custom that the "condemnation" of the type at issue in this litigation be expensive and disruptive to the owner/landlord, though not a permanent interference.  In the absence of permanent occupation, permanent ouster of the owner, or permanent interference with the owner's physical use, possession and enjoyment of the property, there is no claim to inverse condemnation available under New York law and pursuit of same would be futile.  *See Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 785-86 (2012); *Weaver v. Town of Rush*, 1 A.D.3d 920 (4th Dept. 2004).

150.     Second, New York's doctrine of governmental immunity immunizes municipalities and their officers, agents and employees from liability for acts that are discretionary when the employee is engaged in a "governmental function." Unlike where a government entity performs a purely proprietary role, i.e. its activities essentially substitute for or supplement traditionally private enterprises such that ordinary rules of negligence apply, when the municipality engages in a governmental function, it enjoys immunity unless the municipality has taken on a "special duty." *Applewhite v. Accu-Health, Inc.*, 21 N.Y.3d 420, 425-26 (2013). Included within the spectrum of governmental functions are the issuance of building permits and certificates of occupancy and certifying compliance with fire safety codes. *Id.* at 426 (citing *Rottkamp v. Young*, 15 N.Y.2d 831, 833 (1965) and *Worth Distribs. v. Latham*, 59 N.Y.2d 231, 237 (1983)).

151.     Third, Jamestown Code § 215-67 immunizes every officer, agent and employee of the City of Jamestown from personal liability for any damages that may accrue to Plaintiff and other persons as a result of any official determination, order or action required or permitted in the discharge of his duties under Chapter 215.

## JURY TRIAL DEMANDED

152.     Plaintiff demands trial by jury of all issues.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court issue judgment as follows:

A.)     Declaring that Defendants' condemnation and seizure of the residential dwelling commonly known as 1091 E. Second Street in the City

of Jamestown was unconstitutional and in violation of the Fourth and Fourteenth Amendments to the United States Constitution;

B.)     Enjoining Defendants from continuing said condemnation and seizure and to vacate said condemnation, to remove the notice condemning said premises, and to refrain from entering into said residential dwelling except pursuant to a lawfully-issued search warrant;

C.)     Declaring, pursuant to 28 U.S.C. § 2201, that Chapter 215 of the Jamestown Code is unconstitutional when applied to condemn properties based only on suspected narcotics-related activity;

D.)     Permanently enjoining Defendants from condemning properties pursuant to Chapter 215 of the Jamestown Code based only on suspected narcotics-related activity;

E.)     Awarding Plaintiff damages in the amount of $750,000, together with pre-judgment interest;

F.)     Awarding Plaintiff the costs of this litigation, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

G.)     Granting Plaintiff such other and further relief as to this Court deems just and proper.

Respectfully submitted,

Dated: October 23, 14
       Kenmore, New York

Parker R. MacKay, Esq.
The Law Office of Parker R. MacKay
3110 Delaware Ave., Kenmore NY 14217
Ph:  (716) 803-8166
Fax: (716) 408-1651
Em: Parker@MacKayLawOffice.com

*Attorney for Plaintiff Royal Housing, LLC*

-35-

# EXHIBIT A

**DEPARTMENT OF DEVELOPMENT**

CITY OF JAMESTOWN

HOUSING ASSISTANCE
PROGRAMS
AND
CODE COMPLIANCE

MUNICIPAL BUILDING
JAMESTOWN, NEW YORK 14701

Phone (716-483-7542)          (716)   483-7541 • FAX (716) 483-7772

## NOTICE TO VACATE

To:  Occupants
     1091 E 2nd St
     Jamestown, NY 14701

Date: <u>September 5, 2014</u>

PLEASE TAKE NOTICE there exists violations of the Jamestown City Code for the premises known as <u>1091 E 2nd St</u>

The specific violation(s) is/are designated as follows:
   <u>**Declared nuisance**</u>

in violation of Section <u>215-46</u>

YOU ARE HEREBY ORDERED to vacate the premises at <u>1091 E 2nd St</u> on or before the <u>5th</u> day of <u>September, 2014</u>.

FAILURE TO COMPLY MAY RESULT IN THE FOLLOWING PENALTIES, OR A COMBINATION THEREOF:

a)  IMPRISONMENT FOR NOT MORE THAN THIRTY (30) DAYS;
b)  A FINE OF NOT MORE THAN ONE THOUSAND DOLLARS ($1,000.00);
c)  A CONDITIONAL DISCHARGE;
d)  AN UNCONDITIONAL DISCHARGE.

EACH DAY THAT AN OFFENSE OCCURS, IT SHALL DEEMED TO BE A SEPARATE OFFENSE PUNISHABLE AS SUCH BY ANY OF THE ABOVE OR COMBINATION THEREOF.

_____
Department of Development
Greg Moran-Rehab and Code Enforcement Officer
716-483-7660

VINCE DEJOY III, DIRECTOR OF DEVELOPMENT

# EXHIBIT B

**DEPARTMENT OF DEVELOPMENT**

CITY OF JAMESTOWN

HOUSING ASSISTANCE
PROGRAMS
AND
CODE COMPLIANCE

MUNICIPAL BUILDING
JAMESTOWN, NEW YORK  14701

(716)  483-7541 • FAX (716) 483-7772

September 5, 2014
Royal Housing LLC
132 1/2 Prospect St
Jamestown NY 14701

Mr. Whitford:

I, Greg Moran, Rehab and Code Enforcement finds that  violations of the City Code
exists at 1091 e 2nd St and am declaring it a nuisance and/or an immediate danger to the
health, safety, or welfare of the occupants or the public under the powers granted to me
under Chapter 215 Sections 46 and 64 of the Code of the City of Jamestown. I am
condemning the property until repairs are made to the property.

Property Address: 1091 E 2nd St.

Greg Moran
Rehab and Code Enforcement Officer, City of Jamestown

VINCE DEJOY III, DIRECTOR OF DEVELOPMENT